

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

---

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301

1-800-659-8726
304-345-2200
FAX: 304-347-5104

April 25, 2023

Wesley P. Page, Esq.
Federal Public Defender
300 Virginia Street E.
Charleston, WV 25301

**FILED**
MAY 2 3 2023
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

    Re: United States v. Benjamin Cisco
       Criminal No. 2:23-cr-00025 (USDC SDWV)

Dear Mr. Page:

  This will confirm our conversations with regard to your client, Benjamin Cisco (hereinafter "Mr. Cisco"). As a result of these conversations, it is agreed by and between the United States and Mr. Cisco as follows:

  1. **PENDING CHARGES.** Mr. Cisco is charged in a seven-count indictment as follows:

    (a) Counts One through Three charge Mr. Cisco with violations of 18 U.S.C. § 1343 (Wire Fraud);

    (b) Counts Four through Six charge Mr. Cisco with violations of 18 U.S.C. § 1956(a)(1)(B)(i) (Money Laundering); and

    (c) Count Seven charges Mr. Cisco with a violation of 18 U.S.C. § 1028A (Aggravated Identity Theft);

  2. **RESOLUTION OF CHARGES.** Mr. Cisco will plead guilty to Counts One and Two of said indictment, which charge him with violations of 18 U.S.C. § 1343. Following final disposition, the United States will move the Court to dismiss Counts Three, Four, Five, Six, and Seven in Criminal No. 2:23-cr-00025 as to Mr. Cisco.

  3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which

                   _____
                      Defendant's
                      Initials

Wesley P. Page, Esq.
April 25, 2023                                Re: Benjamin Cisco
Page 2

Mr. Cisco will be exposed by virtue of this guilty plea is as follows:

COUNTS ONE & TWO

    (a)    Imprisonment for a period of 20 years;

    (b)    A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)    A term of supervised release of 3 years;

    (d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

TOTAL COMBINED MAXIMUM PENALTY

    (a)    Imprisonment for a period of 40 years;

    (b)    A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)    A term of supervised release of 3 years;

    (d)    A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013; and

    (e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

    4.    **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Cisco will tender a check or money order to the Clerk of the United States District Court for

*[Defendant's Initials: BPC]*

Wesley P. Page, Esq.
April 25, 2023                                    Re: Benjamin Cisco
Page 3

$200, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Cisco will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Cisco fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Cisco.

  5. **RESTITUTION**. Notwithstanding the offense of conviction, Mr. Cisco agrees that he owes restitution in the amount of $871,288.34 and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Mr. Cisco further agrees as follows:

  (a) Mr. Cisco agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

  (b) Mr. Cisco will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

  (c) Mr. Cisco agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

  (d) Mr. Cisco agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and

<span style="float:right">_BPC_<br>Defendant's<br>Initials</span>

Wesley P. Page, Esq.
April 25, 2023                          Re: Benjamin Cisco
Page 4

      interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e)   Mr. Cisco agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Mr. Cisco to pay a greater or lesser sum of restitution in accordance with law.

6.   **FORFEITURE.** Mr. Cisco hereby agrees as follows:

(a)   To forfeit to the United States any and all property in Mr. Cisco's possession or under his control which constitutes proceeds of, or was derived from proceeds, or was involved in the offense to which Mr. Cisco is agreeing to plead guilty, and is set forth in this indictment, namely the violation of 18 U.S.C. § 1343. Mr. Cisco further agrees that he will not contest a forfeiture money judgment in the amount $518,101.70, which amount constitutes a portion of the proceeds of the violations set forth in the indictment.

(b)   To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled. Any such identified property deemed forfeitable by the United States will then be forfeited, pursuant to 18 U.S.C. §§ 981, 982 or 28 U.S.C. § 2461, in either an administrative or judicial forfeiture action;

(c)   To fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States and to return to counsel for the United States the completed Affidavit within seven calendar days from the date of signing this plea agreement;

*BPC*
Defendant's
Initials

Wesley P. Page, Esq.
April 25, 2023                               Re: Benjamin Cisco
Page 5

(d) To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and

(e) To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in <u>United States v. Alexander</u>, 509 U.S. 544 (1993); <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998); <u>United States v. Austin</u>, 509 U.S. 602 (1993); and their progeny.

7. **PAYMENT OF MONETARY PENALTIES.** Mr. Cisco authorizes the Financial Litigation Program in the United States Attorney's Office to obtain a credit report from any major credit reporting agency prior to sentencing in order to assess his financial condition for sentencing purposes. Mr. Cisco agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Cisco further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Mr. Cisco authorizes the United States, through the Financial Litigation Program, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of the defendant's payment status or history at that time.

In addition to any payment ordered by the Court, Mr. Cisco shall pay all monies received from any source other than earned income, including but not limited to, lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the

_BPC_
Defendant's
Initials

court ordered restitution or fine.

Mr. Cisco agrees that if he retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, he shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Program, 300 Virginia Street E., Suite 4000, Charleston, West Virginia 25301, in writing and shall instruct his attorney to notify FLP immediately of his representation.

8. **COOPERATION.** Mr. Cisco will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Cisco may have counsel present except when appearing before a grand jury.

9. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Cisco, and except as expressly provided for in paragraph 11 nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

10. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Cisco for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Cisco for perjury or false statement if such a situation should occur pursuant to this agreement.

_BPC_
Defendant's Initials

Wesley P. Page, Esq.
April 25, 2023                                    Re: Benjamin Cisco
Page 7

    11.  **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Cisco stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts;" however, the "Stipulation of Facts" does not include all of the facts as to the offense or relevant conduct. A copy of the "Stipulation of Facts" is attached hereto as "Plea Agreement Exhibit A."

    Mr. Cisco agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried for his conduct alleged in the indictment and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Cisco or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Cisco knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

    The United States and Mr. Cisco understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

*BPC*<br>——————————<br>Defendant's<br>Initials

Wesley P. Page, Esq.
April 25, 2023                                    Re: Benjamin Cisco
Page 8

12. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Cisco agree that the following provisions of the United States Sentencing Guidelines apply to this case.

| | |
|---|---:|
| USSG §§2B1.1 | |
| Base offense level | 7 |
| | |
| Underlying offense involved loss greater than $550,000 | + 14 |
| | |
| USSG Chapter Three Adjustments | |
| Abuse of trust (§3B1.3) | + 2 |

The United States and Mr. Cisco have no agreement with the respect to the applicability of an enhancement pursuant to USSG § 2B1.1(b)(9)(A) for a misrepresentation that the defendant was acting on behalf of a charitable organization and reserve the right to argue their relative positions at sentencing.

The United States and Mr. Cisco acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

13. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Cisco knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. Mr. Cisco also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction 18 U.S.C. § 1343 is unconstitutional, and (2) Mr. Cisco conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall

_BPC_
Defendant's
Initials

Wesley P. Page, Esq.
April 25, 2023                                   Re: Benjamin Cisco
Page 9

within the scope of the 18 U.S.C. § 1343.

The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Cisco also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

14. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Cisco knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

15. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a)   Inform the Probation Office and the Court of all relevant facts and conduct;

(b)   Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

                                                            _BPC_____
                                                            Defendant's
                                                            Initials

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Mr. Cisco;

    (f)    Advise the Court concerning the nature and extent of Mr. Cisco's cooperation; and

    (g)    Address the Court regarding the issue of Mr. Cisco's acceptance of responsibility.

16. **VOIDING OF AGREEMENT.** If either the United States or Mr. Cisco violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

17. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Mr. Cisco in this matter. There are no agreements, understandings, or recommendations as to any other pending or future charges against Mr. Cisco in any Court other than the United States District Court for the Southern District of West Virginia.

Defendant's Initials

Wesley P. Page, Esq.
April 25, 2023                                    Re: Benjamin Cisco
Page 11

Acknowledged and agreed to on behalf of the United States:

                              WILLIAM S. THOMPSON
                              United States Attorney

                By: _____
                              HOLLY J. WILSON
                              Assistant United States Attorney

                              _____
                              ERIK S. GOES
                              Assistant United States Attorney

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this 11-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____        4/27/23
Benjamin Cisco                              Date Signed
Defendant

_____        4/27/23
Wesley P. Page, Esq.                     Date Signed
Counsel for Defendant

                                                                                   _____
                                                                                         Defendant's
                                                                                         Initials

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:23-cr-00025

Benjamin Cisco

**STIPULATION OF FACTS**

The United States and Benjamin Cisco (hereinafter "I," and "my,") stipulate and agree that the facts comprising the offenses of conviction (Counts One and Two) in the Indictment in the Southern District of West Virginia, Criminal No. 2:23-cr-00025 and some of the relevant conduct for that offense, include the following:

The Scheme to Defraud

From on or about March 19, 2020, through on or about September 28, 2022, I devised and executed a scheme to defraud a charitable non-profit organization (the "Victim Charity"). Through a series of fraudulent transactions, I rerouted money intended for suffering West Virginians to my personal bank account, illegally obtaining hundreds of thousands of dollars.

The scheme took place in Belle, and Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere. I lived in Charleston, Kanawha County, West Virginia, for a period during the scheme, that is, from approximately March 19, 2020, through September 28, 2022. The Victim Charity maintained offices in the Southern District of West Virginia and operated as a 501(c)(3) non-profit organization that provided disaster relief services to West Virginia communities in need.

My position as the Victim Charity's Finance and Operations Manager gave me the unique ability to carry out the scheme. At all relevant times, I had control over the Victim Charity's finances; I had access to the Victim Charity's debit cards; and I regularly worked with the Victim Charity's accountant. My duties as Finance

and Operations Manager included preparing the Victim Charity's biweekly payroll, depositing payments into the Victim Charity's bank accounts, and providing the Victim Charity's board of directors with updates about the non-profit's finances.

I primarily used four accounts to perpetrate the scheme: (1) the Victim Charity's bank account at JP Morgan Chase (the "Chase Account"); (2) the Victim Charity's bank account at Branch Banking & Trust Company, now known as Truist, ending in 7314 (the "Truist Account"); (3) the Victim Charity's fundraising account with the crowd-funding platform, Flipcause, (the "Flipcause Account"); and (4) my personal bank account at Truist ending in 9349 ("Personal Account"). I do not dispute that all of the accounts were held by banks that were considered financial institutions pursuant to 18 U.S.C. § 20 and 31 U.S.C. § 5312.

I designed the scheme as a two-step process to make the transfers appear legitimate and to hide that I was misappropriating the Victim Charity's funds for my own personal gain. First, without authorization, I used the Victim Charity's debit cards to electronically transfer money into the Flipcause Account. The Flipcause Account would record the transfers as "donations." Then, I would electronically transfer money from the Flipcause Account to my Personal Account. I listed myself as Flipcause's contact for the Victim Charity, linked my Personal Account to the Flipcause Account, and on the Flipcause platform, falsely labeled my Personal Account as belonging to the Victim Charity. Because I listed myself as the Victim Charity contact on the Flipcause account, I was the only individual with whom Flipcause would communicate.

I executed this two-step process on over 100 occasions between March 19, 2020, and September 28, 2022. I used online banking to electronically conduct all of the financial transactions. I agree that all of the associated transfers between accounts traveled in and affected interstate commerce. I agree that Flipcause used servers outside the State of West Virginia to process all the electronic financial transfers into and out of the Victim Charity's Flipcause account.

### Specific Offense Conduct

As part of the scheme, on January 28, 2022, I instructed Flipcause to electronically transfer $4,724.00 from the Victim Charity's Flipcause account to my Personal Account, which I had falsely labeled as a Victim Charity account. This transfer traveled

in interstate commerce between Charleston, West Virginia, and California.

Additionally, on May 6, 2022, I instructed Flipcause to electronically transfer $2,874.00 from the Victim Charity's Flipcause account to my Personal Account, which I had falsely labeled as a Victim Charity account. This transfer traveled in interstate commerce between Charleston, West Virginia, and California.

## Relevant Conduct

Below are examples of transfers I made in furtherance of the scheme.

*Examples of Fraudulent Transfers in Furtherance of the Scheme*

| Approximate Date Funds Transferred to Victim Charity's Flipcause Account | Victim Charity's Bank Account Funds Transferred From | Approximate Amount Transferred | Approximate Date Funds Transferred from Victim Charity's Flipcause Account | Defendant BENJAMIN CISCO's Bank Account Funds Transferred To | Approximate Amount Transferred |
|---|---|---|---|---|---|
| 3/19/2020 | XX7314 | $4,124.48 | 3/24/2020 | XX9349 | $3,995.00 |
| 3/25/2020 | XX7314 | $3,622.50 | 3/31/2020 | XX9349 | $3,500.00 |
| 7/21/2020 | XX7314 | $1,811.25 | 7/24/2020 | XX9349 | $1,750.00 |
| 8/4/2020 | XX7314 | $2,225.25 | 8/7/2020 | XX9349 | $2,150.00 |
| 8/12/2020 | XX7314 | $2,535.75 | 8/17/2020 | XX9349 | $2,450.00 |
| 8/18/2020 | XX7314 | $2,234.57 | 8/21/2020 | XX9349 | $2,159.00 |
| 8/26/2020 | XX7314 | $2,172.47 | 8/31/2020 | XX9349 | $2,099.00 |
| 8/31/2020 | XX7314 | $2,535.75 | 9/4/2020 | XX9349 | $2,450.00 |
| 8/31/2020 | XX7314 | $2,209.73 | 9/4/2020 | XX9349 | $2,135 |
| 12/23/2021 | XX7314 | $2,637.18 | 12/28/2020 | XX9349 | $5,445.00 |

| 1/26/2022 | XX7314 | $1,944.77 | 1/28/2022 | XX9349 | $4,724.00 |
| 5/4/2022 | XX7314 | $3,078.09 | 5/6/2022 | XX9349 | $2,874.00 |
| 5/26/2022 | XX7314 | $3,232.31 | 5/31/2022 | XX9349 | $6,373.00 |
| 8/15/2022 | XX7314 | $3,687.71 | 8/24/2022 | XX9349 | $7,236.00 |
| 9/12/2022 | XX7314 | $3,440.34 | 9/20/2022 | XX9349 | $7,558.00 |

Further, I took steps to conceal the scheme from the Victim Charity and governmental authorities. I created fictitious documents to convince the Victim Charity's accountant that the transfers to the Flipcause Account were legitimate. At the time I created these documents, I knew that they were false. One of these fictitious documents was a purported letter from "J.R.," a Flipcause employee, that falsely listed charges the Victim Charity incurred for Flipcause's web design services. I gave this letter to the accountant, and she used it to prepare financial documents for the Victim Charity's board of directors. After, without the accountant's knowledge or agreement, I altered the financial documents to remove any reference to expenditures for Flipcause's web design services, and I presented those altered documents to the Victim Charity's board of directors. My position as the Finance Manager gave me the unique ability to cover up the scheme.

## Monetary Loss

As a result of the wire fraud scheme, I caused a loss of at least $518,101.70 from the Victim Charity. I received at least $498,675.00 of the Victim Charity's funds from the wire fraud scheme. I caused an additional $353,186.64 loss to the Victim Charity through my relevant conduct. Specifically, I received approximately $285,626.64 from the Victim Charity by receiving travel reimbursements that I was not entitled to receive. I also received approximately $67,560.00 from the Victim Charity by purchasing gift cards at Lowe's Home Improvement store that I was not authorized to purchase. I then used many of the gift cards for my own personal use and benefit. I agree that, in total, my actions caused a loss of approximately $871,288.34 to the Victim Charity.

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning his

**PLEA AGREEMENT EXHIBIT A**

involvement and the involvement of others in the charges set forth in the Indictment.

Stipulated and agreed to:

_____     4-23-23
Benjamin Cisco                      Date
Defendant

_____     4/27/23
Wesley P. Page                      Date
Counsel for Defendant

_____     5/1/23
Holly J. Wilson                     Date
Assistant United States Attorney

_____     5/1/23
Erik S. Goes                        Date
Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT A**

5